IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RS LEGACY CORPORATION, *et al.*, | Case No. 15-10197 (BLS) |
| Debtors.[1] | (Jointly Administered) |
| Peter Kravitz, as Liquidating Trustee of the RSH Liquidating Trust, Plaintiff, vs. Wisconsin Electric Power Company dba WE Energies, Defendant. | Adv. No. **Refer to Summons** |

### COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548 AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502

Peter Kravitz, as Liquidating Trustee of the RSH Liquidating Trust (the "Trustee" or "Plaintiff"), by and through his undersigned counsel, files this complaint (the "Complaint") to avoid and recover transfers against Wisconsin Electric Power Company dba WE Energies (the "Defendant"), and in support thereof alleges upon information and belief that:

### NATURE OF THE CASE

1.      Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all preferential transfers of property that

---

[1]    The Debtors are the following eighteen entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): RS Legacy Corporation (f/k/a RadioShack Corporation) (7710); Atlantic Retail Ventures, Inc. (6816); Ignition L.P. (3231); ITC Services, Inc. (1930); Merchandising Support Services, Inc. (4887); RS Legacy Customer Service LLC (f/k/a RadioShack Customer Service LLC) (8866); RS Legacy Global Sourcing Corporation (f/k/a RadioShack Global Sourcing Corporation) (0233); RS Legacy Global Sourcing Limited Partnership (f/k/a RadioShack Global Sourcing Limited Partnership) (8723); RS Legacy Global Sourcing, Inc. (f/k/a RadioShack Global Sourcing, Inc. (3960); RS Ig Holdings Incorporated (8924); RSIgnite, LLC (0543); SCK, Inc. (9220); RS Legacy Finance Corporation (f/k/a Tandy Finance Corporation) (5470); RS Legacy Holdings, Inc. (f/k/a Tandy Holdings, Inc.) (1789); RS Legacy International Corporation (f/k/a Tandy International Corporation) (9940); TE Electronics LP (9965); Trade and Save LLC (3850); and TRS Quality, Inc. (5417). The address of each of the Debtors is 300 RadioShack Circle, Fort Worth, Texas 76102.

occurred during the ninety (90) day period prior to the commencement of the bankruptcy proceedings of RS Legacy Corporation and its affiliated debtors and debtors in possession (collectively, the "Debtors")[2] pursuant to sections 547 and 550 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Subject to proof, Plaintiff also seeks to avoid and recover from Defendant or any other person or entity for whose benefit transfers were made pursuant to sections 548 and 550 of the Bankruptcy Code any transfers that may have been fraudulent conveyances.

2.    In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtors or that has been scheduled for Defendant. Plaintiff does not waive but hereby reserves all of his rights and the rights of the Debtors to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

## JURISDICTION AND VENUE

3.    This court has subject matter jurisdiction over this adversary proceeding, which arises under title 11, arises in, and relates to cases under title 11, in the United States Bankruptcy Court for the District of Delaware (the "Court"), captioned *In re RS Legacy Corporation, et al.,* Case No. 15-10197 (BLS), pursuant to 28 U.S.C. §§ 157 and 1334(b).

4.    The statutory and legal predicates for the relief sought herein are sections 502, 547, 548 and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[2] The "Debtors" are all entities listed in footnote 1.

5.      This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter final orders for matters contained herein.

6.      Venue is proper in the District of Delaware pursuant to 28 U.S.C. § 1409.

7.      Pursuant to Local Bankruptcy Rule 7008-1, Plaintiff states that he does consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PROCEDURAL BACKGROUND

8.      On February 5, 2015 (the "Petition Date") the Debtors each commenced a case by filing a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code.

9.      On February 6, 2015, the Court entered an order authorizing the joint administration of the chapter 11 cases for procedural purposes pursuant to Bankruptcy Rule 1015(b) [D.I. 98].[3]

10.      On February 13, 2015, the Office of the United States Trustee for the District of Delaware appointed the Official Committee of Unsecured Creditors (the "Committee") of the Debtors.

11.      On April 1, 2015, the Court entered an order authorizing the Debtors to sell certain assets and perform certain obligations under an asset purchase agreement [D.I. 1672] (the "Sale Order"). Under the Sale Order, the Committee was granted authority to commence, prosecute, and compromise all of the Debtors' and their estates' claims and causes of action [D.I. 1672, ¶ 47].

---

[3] All docket items referenced are from Case No. 15-10197, under which the bankruptcy cases are jointly administered.

12.     On October 2, 2015, this Court entered an order confirming the *First Amended Joint Plan of Liquidation of RS Legacy Corporation and Its Debtor Affiliates, As Modified* (the "Confirmation Order" and "Plan," respectively). [D.I. 3067].

13.     The effective date of the Plan (the "Effective Date") occurred on October 7, 2015. [D.I. 3114]. In accordance with the Plan and Confirmation Order, the RSH Liquidating Trust (the "Trust") was established effective on the Effective Date of the Plan, and the Debtors, Committee, SCP Agent,[4] and the Trustee entered into that certain RSH Liquidating Trust Agreement.

14.     Pursuant to Article IV, Section C.1.b of the Plan, standing to pursue the Debtors' Causes of Action, including the Preference Actions and other causes of action arising under chapter 5 of the Bankruptcy Code, was transferred to the Trustee. [D.I. 3967].

15.     Pursuant to Article III, Section B.6 of the Plan, General Unsecured Claims comprise an impaired class of creditors and are not expected to be paid in full.

16.     Pursuant to Article IV, Section L.1. of the Plan, the Debtors' estates were substantively consolidated into a single consolidated Estate for purposes of confirmation and consummation of the Plan.  Specifically, all assets and liabilities of the Debtors are to be deemed merged, and all guarantees by one Debtor of the obligations of any other Debtor shall be deemed eliminated so that a Claim against any Debtor is considered an obligation of all the Debtors.

---

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan and Confirmation Order.

**THE PARTIES**

17.    Pursuant to the Plan, Confirmation Order, and the RSH Liquidating Trust Agreement, the Trustee is authorized and has standing, among other things, to commence, prosecute, and compromise this avoidance action.

18.    As more fully discussed in the *Declaration of Carlin Adrianopoli in Support of First Day Pleadings*,[5] the Debtors and eight non-debtor affiliates (the "Non-Debtor Affiliates," and collectively with the Debtors, the "Company") were international electronics retailers with two principal operations platforms: mobility and retail. The mobility platform included wireless handsets, e-readers, tablet devices, and wireless service plans, while the retail platform included consumer electronics products including batteries, power products, and technical products. RS Legacy Corporation, f/k/a RadioShack Corporation ("RadioShack") was headquartered in Fort Worth, Texas, and was the ultimate parent company for the Debtors. The Company operated more than 4,100 company-operated stores in the United States, Puerto Rico, and U.S. Virgin Islands. The Company also had more than 1,100 RadioShack dealer-franchise outlets throughout the United States, Mexico, and Asia. In addition to storefronts, the Debtors maintained a website for sales and distribution centers for goods.

19.    Upon information and belief, Defendant was, at all relevant times, a vendor to or creditor of the Debtors that provides electric services. Upon further information and belief, at all relevant times, Defendant's principal place of business is located at 231 W. Michigan Street, Milwaukee, WI 53203.   Plaintiff is informed and believes and on that basis alleges that Defendant is a corporation residing in and subject to the laws of the State of Wisconsin.

---

[5] D.I. 17.

## FACTUAL BACKGROUND

20.     Prior to the Petition Date, the Debtors, as international electronics retailers, maintained business relationships with various business entities, through which the Debtors regularly purchased, sold, received, and/or delivered goods and services.

21.     As international electronics retailers, the Debtors regularly purchased goods from various entities including vendors, creditors, suppliers and distributors. The Debtors also regularly paid for services used to facilitate their business.

22.     The Debtors' financial difficulties that led to the decision to file the Bankruptcy Case are attributable to a combination of factors, all of which placed significant stress on the Debtors' liquidity position in the months leading up to the Petition Date and hindered the Company's ability to successfully compete in the markets in which it operated.  These factors included, among other things: (i) an erosion in vendor confidence; (ii) an inability to fully implement a large-scale store closure program; (iii) fundamental changes in the mobility market; and (iv) the Company's 2014 holiday season results. As the Company was required to file reports with the Securities and Exchange Commission, the Company's operating losses have been well-documented.

23.     As of the Petition Date, the Debtors utilized an integrated cash management system (the "Cash Management System") for the collection, concentration, management, and disbursement of funds in the Debtors' business.

24.     The Cash Management System includes various bank accounts, including certain accounts payable disbursement accounts. These disbursement accounts included, but are not limited to, an accounts payable disbursement account with an account number ending in 0970 maintained at Citizens Bank by RadioShack (the "Disbursement Account").

25.     The Debtors drew upon the Disbursement Account to pay their vendors and other third parties, including Defendant.

26.     During the ninety (90) days before the Petition Date, that is between November 7, 2014, and February 5, 2015 (the "Preference Period"), the Debtors continued to operate their business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits or otherwise to various entities.

27.     During the course of their relationship, the Debtors and Defendant entered into agreements, which are evidenced by invoices, communications and other documents (collectively, the "Agreements"). The details of each of the Agreements paid for during the Preference Period are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit A. Such details include "Invoice Number," "Invoice Date," "Invoice Amount," and "Debtor(s) Incurring Antecedent Debt."

28.     The Debtors and Defendant conducted business with one another through and including the Petition Date pursuant to the Agreements.

29.     As identified in the Agreements identified on Exhibit A, the Debtors purchased goods and/or services from Defendant.

30.     Plaintiff has completed an analysis of all readily available information of the Debtors and is seeking to avoid all of the transfers of an interest of the Debtors' property made by the Debtors to Defendant within the Preference Period.

31.     Plaintiff has determined that the Debtors made transfer(s) of an interest of the Debtors' property to or for the benefit of Defendant during the Preference Period through payments aggregating to an amount not less than $43,209.10 (the "Transfer" or "Transfers"). The details of each Transfer are set forth on Exhibit A attached hereto and incorporated by

7

reference. Such details include "Check Number," "Check Amount," "Check Clear Date," and "Debtor Transferor(s)."

32.     During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. It is Plaintiff's intention to avoid and recover all transfers made by the Debtors of an interest of the Debtors in property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves its right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action (*e.g.*, but not exclusively, 11 U.S.C. §§ 542, 544, 545, and/or 549) (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

33.     Plaintiff acknowledges that some of the Transfers might be subject to defenses under Bankruptcy Code section 547(c), for which Defendant bears the burden of proof under Section 547(g).

## CLAIMS FOR RELIEF

### COUNT I
### (Avoidance of Preference Period Transfers – 11 U.S.C. § 547)

34.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

35.     Each Transfer was made to Defendant by the Debtor identified on Exhibit A under the column heading "Debtor Transferor."

36.     Each Transfer was paid from the Disbursement Account described *supra,* and constituted transfers of an interest in property of the Debtors.

37.     Each Transfer constituted a transfer of an interest in property of the Debtors as identified on Exhibit A.

38.     Defendant was a creditor at the time of each Transfer by virtue of supplying goods and/or services identified in the Agreements to the Debtor(s)[6] identified on Exhibit A under the column heading "Debtor(s) Incurring Antecedent Debt" for which the identified Debtors were obligated to pay following delivery in accordance with the Agreements.  See Exhibit A.

39.     Each Transfer was to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor identified on Exhibit A under the column heading "Debtor(s) Incurring Antecedent Debt" to Defendant.  See Exhibit A.

40.     Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor identified on Exhibit A under the column heading "Debtor(s) Incurring Antecedent Debt" to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the Debtor(s) identified on Exhibit "A" under column heading "Debtors Transferor(s)." See Exhibit A.

41.     Each Transfer was made while the Debtors were insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to 11 U.S.C. § 547(f).

---

[6] As identified in paragraph 16 of this Complaint, the Debtors were substantively consolidated under the Plan. Pursuant to this consolidation, all assets and liabilities of the Debtors are to be deemed merged, and all guarantees by one Debtor of the obligations of any other Debtor shall be deemed eliminated so that a Claim against any Debtor is considered an obligation of all the Debtors. Accordingly, as the Debtors are substantively consolidated, the Debtor Transferors column may include RadioShack Corporation as well as certain subsidiary Debtors as incurring the antecedent debt.

42.    Each Transfer was made during the Preference Period. See Exhibit A.

43.    As a result of each Transfer, Defendant received more than Defendant would have received if: (i) the Debtors' case were under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtors' schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, the Debtors' liabilities exceed their assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtors' bankruptcy estates.

44.    In accordance with the foregoing, each Transfer is avoidable pursuant to 11 U.S.C. § 547(b).

### SECOND CLAIM FOR RELIEF
**(Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))**

45.    Plaintiff hereby incorporates all previous allegations as though fully set forth herein.

46.    To the extent one or more of the Transfers identified on Exhibit A was not made on account of an antecedent debt or was a prepayment for goods and/or services subsequently received, Plaintiff pleads in the alternative that the Debtors did not receive reasonably equivalent value in exchange for such transfer(s) (the "Potentially Fraudulent Transfers"); and

    A.    The Debtors were insolvent as of the date of the Transfer(s), or became insolvent as a result of the Transfer(s); or

    B.    The Debtors were engaged, or about to engage, in business or a transaction for which any property remaining with the Debtors or for whose benefit the Transfer(s) was made was an unreasonably small capital; or

C.      The Debtors intended to incur, or believed they would incur, debts beyond their ability to pay upon maturity.

47.     Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

## COUNT III
### (Recovery of Avoided Transfers – 11 U.S.C. § 550)

48.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Count.

49.     Plaintiff is entitled to avoid the Transfer(s) pursuant to 11 U.S.C. § 547(b) and/or any Potentially Fraudulent Transfers pursuant to 11 U.S.C. § 548 (collectively, the "Avoidable Transfers").

50.     Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

51.     Pursuant to 11 U.S.C.§ 550(a), Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus interest thereon to the date of payment and the costs of this action.

## COUNT IV
### (Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))

52.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Count.

53.     Defendant is a transferee of transfers avoidable under section 547 and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

54.     Defendant has not paid the amount of the Avoidable Transfer(s), or turned over such property, for which Defendant is liable under 11 U.S.C. § 550.

55.     Pursuant to 11 U.S.C. § 502(d), any and all Claims of Defendant and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

56.     Pursuant to 11 U.S.C. § 502(j), any and all Claims of Defendant, and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff previously allowed by the Debtors or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s).

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff requests that this Court grant him the following relief against Defendant:

A.  On Plaintiff's First, Second, and Third Claims for Relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to 11 U.S.C. §§ 547(b), 548, and/or 550(a), plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B.  On Plaintiff's Fourth Claim for Relief, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against the Plaintiff until Defendant returns the Avoidable Transfers to Plaintiff pursuant to 11 U.S.C. § 502(d) and (j); and

C.  Granting Plaintiff such other and further relief as this Court may deem just and

proper.

Dated: October 30, 2015

**WHITEFORD, TAYLOR & PRESTON LLC**

Delaware Counsel
**Please refer all questions**
**To Primary Counsel Below**

/s/   *Chantelle D. McClamb*
Christopher M. Samis (No. 4909)
L. Katherine Good (No. 5101)
Chad J. Toms (No. 4155)
Chantelle D. McClamb (No. 5978)
The Renaissance Centre, Suite 500
405 North King Street
Wilmington, Delaware 19801
Telephone: (302) 353-4144
Facsimile: (302) 661-7950
Email: csamis@wtplaw.com
        kgood@wtplaw.com
        ctoms@wtplaw.com
        cmcclamb@wtplaw.com

and

Primary Counsel
(**Please Contact**
**Primary Counsel**)

Joseph L. Steinfeld, Jr., Esq., MN SBN
0266292
Alex Govze, Esq., MN SBN 0388626
ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, MN  55121
Telephone: (651) 406-9665  ext. 842
Fax: (651) 406-9676
e-mail: agovze@askllp.com

and

Edward E. Neiger, Esq.
Marianna Udem, Esq.
Brigette G. McGrath, Esq.
151 West 46th Street, 4th Fl.
New York, NY  10036
Telephone: (212) 267-7342
Fax: (212) 918-3427

*Special Counsel for Peter Kravitz, as Liquidating Trustee*
*of the RSH Liquidating Trust*